UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| VERIZON SICKNESS AND ACCIDENT DISABILITY BENEFIT PLAN FOR NEW ENGLAND ASSOC., <br>   Plaintiff, <br><br>  v. <br><br>JACQUELINE ROGERS, and AFFILIATED LAW OFFICES OF RICHARD M. SANDS, <br>  Defendants and Third-Party Plaintiffs, <br><br>  v. <br><br>VERIZON COMMUNICATIONS, INC. And EQUIAN, LLC., <br>   Third-Party Defendants. | No. 1:21-CV-00110-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

  Jacqueline Rogers ("Rogers") was an employee of Verizon, Inc., and a participant in her employer's disability benefits plan ("Plan")[1], when, in late October 2016, her vehicle was struck from behind and she was too injured to work. Pursuant to the Plan, Rogers went out on disability leave and was paid disability benefits of $44,962.50; her medical costs were also covered by the Plan. After her collection of benefits, and without filing a lawsuit, Rogers settled with the insurer of the car that

---

[1] The Plan is titled the Verizon Sickness and Accident Disability Benefit Plan for New England Associates and is the plaintiff here.

1

had hit her vehicle for a lump sum of $100,000.  She was represented by the Affiliated Law Offices of Richard M. Sands ("Sands" or "firm").  The $100,000 was disbursed, as is customary, to Rogers' attorney, the Sands firm.  The ultimate disposition of that $100,000 is relevant to the outcome in this case, as discussed below.

Verizon,[2] filing this lawsuit approximately 18 months after Rogers settled her accident case, lays claim to $44,962.50 of that settlement, seeking reimbursement of the disability benefits it paid.  Sands vehemently disputes Verizon's entitlement to any part of the settlement.  Rogers is apparently playing no part in these post-settlement activities; the plaintiff, while naming her as a defendant in Count I, has not served her, and she has therefore not been active in this case.

Verizon's cause of action arises under Section 502(a)(3) of the Employment Retirement Securities Act ("ERISA"), 29 U.S.C. § 1132(a)(3)(B)(ii), which provides that a fiduciary may seek equitable relief to enforce the terms of a Plan.  Verizon maintains that the Plan, in its subrogation clause, required Rogers to reimburse it for the benefits it paid her, and that the obligation created an equitable lien on the proceeds of the settlement.  It argues that this action against Sands, to whom the settlement proceeds were given, is an equitable one to enforce the reimbursement

---

[2] There is more than one corporate player in this case whose name includes "Verizon."  There is Verizon, Inc. which, according to the Complaint, employed Rogers.  (ECF No. 1 ¶ 5.)  There is Verizon Communications, which in the plaintiff's memorandum in support of summary judgment is also identified as Rogers' employer.  (ECF No. 32 at 1.).  Verizon Communications also sponsors the disability Plan.  (ECF No. 32 at 5.)  There is, finally, the Verizon Employee Benefit Committee ("VEBC") whose chairperson is the Plan's designated Administrator.  *Id.*  Unless the distinction is important, they are referred to collectively as "Verizon."

2

requirement of the Plan, and thus falls within §1132(a)(3)(B)(ii). Sands disagrees that Verizon has an *equitable,* rather than a *legal,* action[3] and this issue is central to their dispute.

Sands has counterclaimed against the Plan for a violation of 29 U.S.C. §1024(b)(4), a provision of ERISA that requires the administrator of a Plan to furnish certain documents to any participant or beneficiary. (ECF No. 7.) Verizon contests that claim because, it maintains, Sands is neither a beneficiary of nor a participant in the Plan and therefore lacks standing, that the documents he accuses the Plan of withholding are not documents required to be furnished, and that Sands' request for documents was not made to the Plan administrator.

Sands then filed a third-party Complaint against both Verizon Communications and Equian. That Complaint repeats the allegation of a violation of § 1024(b)(4) against Equian (Count 3). In addition, Count 1 accuses Verizon Communications and Count 2 accuses Equian of violating 29 U.S.C. § 1029(c).[4] Finally, Counts 4 and 5 allege that Verizon Communications and Equian, respectively, intentionally and tortiously interfered with Sands' contract to zealously

---

[3] The Court knows of no other claims brought against Sands or Rogers by Verizon. There are no supplemental state claims by Verizon in this case, although Sands has raised a state claim of tortious interference with contract in his third-party suit against Verizon Communications and Equian, LLD ("Equian"). Equian, which enters in Act II of this drama, was retained by Verizon to pursue its subrogation rights under the Plan.

[4] 29 U.S.C. 1029(c) is directed at the Secretary of Labor and governs the content and format of the material, such as the Summary Plan Description and Annual Report, that § 1024 mandates must be supplied to beneficiaries and participants.

represent Rogers "in her pursuit for damages arising out of the injuries she sustained in the motor vehicle accident." All the claims in the third-party Complaint are based on the Plan's allegedly unlawful failure to turn over to Sands specific records related to Rogers' employment that he had requested in connection with his representation of her in the car accident case.

## I. SUMMARY JUDGMENT

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Notes). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort &*

*Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)).  "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir. 1995).  Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. … If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991 (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure Civil,* § 2725, at 104 (1983)).

## II. DISCUSSION

A claim-by-claim approach is warranted.

### A. Verizon's Claim for Enforcement of an Equitable Lien (29 U.S.C. § 1132(a)(3)(B)(ii))

#### 1. Does an Equitable Lien Exist?

Verizon argues that the terms of the Plan created a lien against the proceeds of the settlement.  None of the relevant provisions are contained in the Plan itself. (ECF No. 32-1.)  Instead, the plaintiff relies on the Summary Plan Description ("SPD"), a document that, with the Plan, is required to be distributed to beneficiaries and participants.  29 U.S.C. § 1024(b)(4).  Sands first contests whether language in the SPD can create a lien because it is outside the Plan document.  The simple answer is that the SPD is explicitly incorporated by reference in the section of the Plan that

defines "Plan."[5] (ECF No. 32-2 at 3.) Thus it is not merely a supplementary document but is part of the Plan itself. *Cf. Rhea v. Alan Ritchey, Inc.,* 85 F. Supp. 3d 870, 874-75 (E.D. Tex. 2015) (where SPD was the only document and declared itself to be the Plan, its terms controlled.).[6]

The SPD, in a section entitled "Subrogation and Third-Party Reimbursement," makes crystal-clear that its subrogation rights become ripe if a participant who has been paid benefits recovers from a third party. (EF No. 32-2 at 21.) It is written in language as intelligible to laypersons as insurance policies get:

> If you recover any charges for covered expenses from a third party (for example, as a result of a lawsuit from an automobile accident), the Plan's provision for subrogation and reimbursement takes effect. … In this example of a car accident, should the Plan provide benefits because of your accident, the Plan has the right to recover the amount of these benefits from the negligent person or by obtaining a reimbursement from that person's insurance company – *or from you if settlement amounts have been paid to you by the negligent person or his or her insurer.*

*Id.* (emphasis supplied).

---

[5] "This document shall incorporate by reference any summary plan description, summaries of material modifications, enrollment materials, and other such communications relative to the Plan as may be approved from time to time by the Company." (ECF No. 32-2 at 3.)

[6] *CIGNA Corp. v. Amara,* 563 U.S. 421 (2011), is not to the contrary. In CIGNA, where the Court distinguished between the Plan and the SPD, there was no language explicitly incorporating the SPD into the Plan itself. In addition, the SPD there contained "misrepresentations" about the plan. *Id.* at 445 (Scalia, concurring). Here, the *only* provision about subrogation and reimbursement is contained in the SPD and so the role of the SPD in this case – consistent with its incorporation by reference into the plan – is not to simply be "an easily accessible summary of the plan," *id.* at 446, but a statement of its terms. An SPD may be part of a Plan so long as its provisions do not conflict with those of the Plan and the insurer demonstrates that the SPD is part of the Plan. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.,* 663 F.3d 1124, 1131 (10th Cir. 2011) (post-*Amara*).

>It goes on,
>
>>The subrogation and reimbursement provisions also mean that if you make a liability claim against a third party after you have received benefits from the Plan, you must include the amount of those benefits as part of the damages you claim.  If the claim proceeds to a settlement or judgment in your favor, you must reimburse the Plan for the benefits you received.
>
>*Id.*

This language creates a lien against any third-party proceeds received. *Carpenter Tech. Corp. v. Weida,* 300 F. Supp. 3d 663, 669 (E.D. Pa. 2018).  The Sands firm protests that language immediately following – "You and your dependents must grant a lien to the Plan" – means that the Plan itself does not create the lien, but simply instructs the beneficiary to take some *future* action to create a lien.[7]  Sands suggests that the future action must be a separate agreement executed by Rogers in which she consents to a lien.  When the paragraph is read together, the defendant's interpretation fails.  The Plan intends to — and by its emphatic and clear declaration that the beneficiary must reimburse, *does* – create an extant lien.  Sands cites no authority suggesting that the language "must grant" implicitly requires some future action by the beneficiary before the lien becomes enforceable.

---

[7] When the plaintiff asserts in its Memorandum that "the Sands firm does not challenge the existence of an equitable lien" (ECF No. 43 at 8), that is incorrect.  Sands argues that the Plan only instructed the beneficiary to grant a lien, impelling that further action, such as the signing of a separate agreement, before a lien could come into existence.  Indeed, the preceding Sands Memorandum begins with a section subheaded, "1. The Verizon Plan Does Not Establish an Equitable Lien."  (ECF No. 41 at 2.)

Sands cites cases in which the Plan language explicitly states that an "automatic lien" is created by its terms, *e.g., Bd. of Trustees for Laborers Health and Welfare Trust Fund for N. Cal. v. Hill,* No. C 07-5849 CW, 2008 WL 5047705, at *3 (N.D. Cal. Nov. 25, 2008), or whose declaration of a "first right to reimbursement" implicitly creates an automatic lien. *E.g., Quest Diagnostics v. Bomani,* No. 3:11CV 951 MPS, 2013 WL 3148651, at *2 (D. Conn. June 19, 2013). But holding that the use of language like that creates an enforceable lien does not imply the opposite: that the absence of such language means a lien is not created. The Court does not accept that error in logic. Any number of cases exist discussing the enforcement of an equitable lien on language similar to Verizon's without any separate agreement or special phrasing. Indeed, in the watershed case of *Sereboff v. Mid Atlantic Med. Services, Inc.,* 547 U.S. 356, 359 (2006), the Supreme Court addressed the enforceability of an equitable lien in the face of alleged disbursement of the funds. The Court described the Plan only as requiring the beneficiary to reimburse Mid Atlantic for benefits after the beneficiary had settled with a third party. *Id.* Not only is there no indication that the beneficiary had signed a separate agreement, or made a separate "promise" to reimburse, his attorney had specifically refused to honor the lien. *Id.* at 360; *see also, Longaberger Co. v. Kolt,* 586 F.3d 459, 471 (6th Cir. 2009), *abr. on other gnds, Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan,* 577 U.S. 136, 141 n.2 (2016) (abrogated relative to whether dissipation of assets destroys equitable lien); *Carpenter Tech. Corp.* 300 F. Supp.3d at 669 (equitable lien created by language setting forth the Plan's right to recovery); *Rhea*

*v. Alan Ritchey, Inc.,* 85 F. Supp.3d 870, 879 (E.D. Tex. 2015) (where the participant had a preexisting obligation pursuant to Plan language requiring reimbursement for benefits paid, an equitable lien by agreement arose).

### 2. Can the Lien Be Enforced Against a Non-participant Attorney?

Sands is the party left standing here. While Rogers was the plan participant and beneficiary, and the one who was paid the benefits, she is not apparently a viable party from whom to seek reimbursement. Sands protests that as the participant's attorney, he was not a signatory to the Plan and its provisions cannot be enforced against him. That argument fails.

Section 1132(a)(3) permits a fiduciary such as the plaintiff "(A) to enjoin any act or practice which violates any provision of [ERISA Title 1] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or of the terms of the plan." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 246 (2000). In its creation of causes of action, the statute "admits of no limit (aside from the "appropriate equitable relief" caveat …) on the universe of possible defendants." Indeed, § 502(a)(3) makes no mention at all of which parties may be proper defendants …" *Id.*

The situation in which the Sands firm finds itself is not unusual. In a number of similar circumstances, courts have permitted § 1132 lawsuits to go forward against attorneys who collected settlements from third parties for Plan beneficiaries who had been paid benefits. In *Synchrony Fin. Welfare Ben. Comm. v. DeMayo Law,* No. 3:21-CV-00376-RJC-DSC, 2022 WL 2600165 (W.D.N.C. July 8, 2022), the DeMayo Law

9

Firm settled a car accident claim for its client who had received medical benefits of $51,760.59. When the firm received the settlement funds, it disbursed only $8,909.19 to the Plan, and the Plan sued the attorney claiming an equitable lien on the proceeds. Relying on *Harris,* and several other cited district court decisions, the Court denied the attorney's motion to dismiss. "[T]he overwhelming weight of Supreme Court and other circuit court authority supports the availability of a claim for equitable relief against [the attorney and law firm defendants.]" *Synchrony at \*3* (quoting *Barnhill Contracting Co. v. Oxendine,* 105 F. Supp. 3d 542, 549 (E.D.N.C. 2015)); *accord, Kohl's Dept. Stores v. Castelli,* 961 F. Supp. 2d 415, 417 (E.D.N.Y. 2013) (suit against participant and law firm); *Crawford & Co. Med. Ben. Trust v. Repp.,* No. 11 C 50155, 2012 WL 716921, at \*3 (N.D. Ill. Mar. 6, 2012); *Mank v. Green,* 368 F. Supp. 2d 102, 103 (D. Me. 2005) (lawsuit against beneficiary and her law firm to recover medical expenses paid her).

### 3. Is the Action an Equitable or Legal One?

Having determined that an equitable lien *was* created, and that the Sands firm is an appropriate defendant from whom Verizon can seek relief, we arrive at the core issue here, and Sands' most promising avenue of defense. At the time the benefits were paid to Rogers, there is no question an equitable lien was created stemming from Verizon's right to recover what it had paid her if she collected from a third- party and the requirement that she in fact reimburse Verizon out of those third-party funds. However, Sands alleges that it has disbursed, or dissipated, the $100,000 it received, asserting that it took $1,007.56 off the top for costs, gave Rogers $62,001.44,

10

paid Equian $5,573.40 for certain health expenses, and retained $31,617.60 as its 40% contingency fee. Further, Sands asserts that it spent its $31,617.60 fee received on various ordinary operating expenses of the firm's.

The United States Supreme Court has addressed dissipation of settlement proceeds by a Plan participant and held squarely that, if the funds have entirely been dissipated, the viability of the equitable lien that had been created depends on whether the original funds can be traced to particular items. *Montanile,* 577 U.S. at 139. If so, then a constructive trust would continue to operate against the items bought with the settlement proceeds. *Id.* If not, however, and the proceeds have been entirely dissipated on nontraceable items, the equitable lien is eliminated. *Id.* Any further action to collect on the proceeds would be legal, not equitable, in nature once the lien has been eliminated. *Id.* at 145. And, in that event, § 1132(a)(3) would no longer authorize an action to recover, as it is explicitly limited to "equitable relief." *Id.* at 145-46. Equity depends, the Court reasoned, on the principle that the court can "lay hold of" the property, and if the property is gone (without being replaced by identifiable assets), no equitable remedy remains. *Id.* Expenditure of the entire identifiable fund destroys the equitable lien. *Jette v United of Omaha Life Ins. Co.,* 387 F. Supp. 3d 149, 156 (D. Mass. 2019) (§ 1132(a)(3) action to recover overpayments dismissed where insurer failed to allege the funds were still in the participant's possession). Moreover, an action against the *general* assets of the participant is a legal action to impose personal liability, again not authorized under § 1132(a)(3). *Sereboff v. Mid Atlantic Med. Services,* 547 U.S. 356, 363 (2006).

Whether the $100,000 settlement proceeds have been completely disbursed on nontraceable items is a question of fact. *Montanile,* 577 U.S. at 151. And in this case, it is disputed fact that is very much material to this action. Both parties fault the other for a lack of an adequate factual record to determine the answer. The Plan argues that the Sands firm should have come forward with a detailed accounting of where the $100,000 went, complete with records showing revenue into and expenditures out of the firm's operating accounts.[8] (ECF No. 43 at 3.) Sands argues that it was up to the Plan to demonstrate that some funds are still in its possession. (ECF No. 47 at 6.) In either account, the parties seem to agree that the record here

---

[8] Simply comingling the funds with the firm's operating monies, does not destroy the lien. If the funds are comingled, but still exist, the lien is not destroyed and recovery can be had from "the entire pot of money." *Montanile,* 577 U.S. at 149. Sands has provided an Affidavit and Profit & Loss Statement for the period October – December 2021 (ECF No. 33-A) that in aggregate fashion indicates that he received some $124,000 in revenue during that period and expensed approximately the same amount to run the firm. Verizon argues that the commingling of the settlement monies into the firm's general operating account makes the "lowest intermediate balance" doctrine applicable.

is insufficient.⁹ Thus, a genuine issue of disputed material fact exists that precludes summary judgment for either one of them.¹⁰

---

⁹ Sands relies heavily on *Emp. Benefit Plan of Compass Grp. USA, Inc. v. Miller, Rosnick, D'Amico, August, and Butler, P.C.,* No. 3:14-cv-00389 (RNC), 2019 WL 4760360 (D. Conn. Sept. 30, 2019). While the situation described there is much like that here, there are two important differences. First, the Plan did not contest the entitlement of the participant's attorney to fees for representation of the participant against the third party. *Id.* at *4. Second, there was a factual record developed relative to dissipation of the remaining funds. There was supplemental briefing and supplemental discovery. *Id.* at *3. The defendant also waived "any defense to [Plaintiff's] claim[s] that may be available pursuant to [Montabile] and which is based on [Defendant's] purported dissipation, commingling, or otherwise disbursing its fees and costs occurred in connection with the legal representation provided to [the participant]." *Id.*

¹⁰ Sands asserts he would be entitled to a "reasonable" fee by virtue of the Common Fund Doctrine which holds that one who recovers for someone else is entitled to a reasonable fee from the whole. *U.S. Airways, Inc. v. McCutchen,* 569 U.S. 88, 96 (2013). It is an exception to what is known as the "'American' rule, that each party to litigation bears its own attorney's fees, absent a fee-shifting statute." *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco,* 338 F.3d 680, 688 (7th Cir. 2003). The Common Fund Doctrine can be abrogated by a particular Plan, but if a Plan is silent about the allocation of the participant's third-party recovery, the doctrine comes into play and "provides the appropriate default." *McCutchen.* at 101.

   Verizon claims two provisions in the SPD abrogate the doctrine. The first provides that the Plan "is not responsible for [the participant's] legal costs." (ECF No. 32-1 at 21.) Verizon's argument is that not allowing recovery against Sands would amount to making it, in effect, "responsible" for his fees. Second, the SPD provides that Verizon will require payment "only for amounts recovered that are net of your legal costs related to the *action.*" *Id.* Verizon argues that "action" refers only to a filed lawsuit, and that because Rogers' accident damages resulted from a settlement without filing litigation, the "net of your legal costs" does not apply. Therefore, it maintains, the impact is to abrogate the Common Fund Doctrine. The Doctrine must be specifically and clearly abrogated. *United Airways,* 569 U.S. at 102-04.

   The Doctrine is relevant, however, only if the funds have not been totally dissipated (which Sands claims they have been), a predicate factual issue at dispute here. If they have been totally dissipated, no portion of them would exist to be reserved for attorney's fees.

13

Therefore, both the plaintiff's and defendant's Motions for Summary Judgment on Count 2 of the Complaint are DENIED.

### B. Sands' Counterclaims and Third-Party Complaint

#### 1. Violation of 29 U.S.C. § 1024(b)(4)

In Count 1 of his counterclaim, repeated in Counts 1-3 of his third-party Complaint against Equian and Verizon Communications, Sands outlines a violation of 29 U.S.C. § 1024(b)(4) which imposes on certain Plan entities an obligation to furnish particular written materials to beneficiaries and participants. The provision requires the Plan administrator,

> upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

It is not disputed that Sands made a request, on behalf of Rogers, to be provided with, on company letterhead, "1. Ms. Rogers' position with Verizon Communications. 2. The dates Ms. Rogers was absent after being injured in the accident on 10/27/16. 3. Ms. Rogers' hourly rate of pay and the average number of hours she customarily worked each week." (ECF No. 33-2.) Equian responded that it would provide those documents only upon receipt of a subpoena. (ECF No. 33-3.)[11] The failure to turn over the requested information without a subpoena forms the basis of Sands'

---

[11] Further correspondence between Equian and Sands can be found in the Exhibits to ECF No. 33.

counterclaim (ECF No. 7 at 7, ¶ 5) and Counts 1 – 3 of the third-party Complaint. (ECF No. 19.) Sands seeks statutory penalties.

Verizon Communications and Equian pose a number of defenses, but the clearest is that § 1024 on its face does not require production of "employment records," which is what the Sands request sought. It mandates the furnishing only of Plan documents, not specific to any beneficiary or participant. There is no dispute about what was sought and both Verizon Communications and Equian are entitled to summary judgment on the counterclaim and the third-party complaint.

2. **Tortious Interference with Contract**

Counts 4 and 5 of the third-party Complaint allege that Verizon and Equian, respectively, tortiously interfered with the contract between Sands and Rogers by withholding the employment information requested by Sands and, as a consequence, prevented Sands from representing Rogers zealously. That interference, Sands claims, "diminished the settlement value received and the Firm's fee." (ECF No. 19 at ¶ 46.)

Tortious interference is a state-law claim whose elements include an intentional and improper act, performed with malice. Sands alleges that the insistence on a subpoena before turning over employment information was such an act. The elements of the cause of action are "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *Avilla v. Newport*

*Grand Jai Alai LLC,* 935 A.2d 91, 98 (R.I. 2007). The act of interference must be improper. *Id.* In addition, "[t]here must still … be something 'illegal' about the means employed." *Id. (*quoting *Tom's Foods v. Carn,* 896 So.2d 443, 458 (Ala. 2004) (ellipse original)). Put another way, "[t]he means used [must rise] to the required level of wrongfulness." *Id.* at 99 (quoting *Great Escape, Inc. v. Union City Body Co.,* 791 F.2d 532, 543 (7th Cir. 1986)). "Legal malice – an intent to do harm without justification –" is required. *Roy v. Woonsocket Inst. For Sav.,* 525 A.2d 915, 919 (R.I. 1987).

Sands has failed to submit any evidence from which it could even be inferred that either Verizon or Equian acted with the state of mind required or that the means employed were improper, wrongful or illegal. There is nothing improper about requiring a subpoena, particularly since, as the Court has already found, Sands was not entitled to the information requested by the terms of 29 U.S.C. § 1024.

Verizon Communications and Equian are entitled to summary judgment on the third-party Complaint.

### III.   CONCLUSION

Sands' Motion for Summary Judgment or for Judgment on the Pleadings (ECF No. 31) is DENIED in all respects. The Motion for Summary Judgment (ECF No. 34) filed by the Verizon Plan with respect to Count 2 of the Complaint is DENIED. The Motion for Summary Judgment (ECF No. 34) filed by Verizon Communications and Equian with respect to the counterclaim and the third-party Complaint is GRANTED.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge
Date: March 15, 2023